Ronald David LUDWIG, Appellant,

v.

The STATE of Texas, Appellee.

No. 561–94.

Court of Criminal Appeals of Texas,
En Banc.

June 19, 1996.

Steven R. Rosen, Houston, for appellant.

David E. Sloan, Asst. Dist. Atty., Waxahachie, Matthew Paul, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

A jury convicted appellant of capital murder, pursuant to V.T. C.A. Penal Code, § 19.03. When the jury failed to answer affirmatively the two special issues submitted at the punishment hearing, the trial court assessed punishment at life. Appellant's conviction was affirmed by the Tenth Court of Appeals. *Ludwig v. State,* 872 S.W.2d 771 (Tex.App.—Waco 1994). On appeal appellant argued that the trial court erred in allowing his wife to testify to certain conversations between her and appellant, over the objection that those conversations were privi-

leged communications under Tex.R.Cr.Evid., Rule 504(1). The court of appeals held that the trial court did not err because the communications were not privileged; since appellant was charged with an offense against a minor child, the exception in Tex.R.Cr.Evid., Rule 504(1)(d)(2) was applicable.[1] We granted appellant's petition for discretionary review to examine this holding. See Tex.R.App.Pro., Rule 200(c)(2) & (4).

### I.

Appellant was charged with the murders of Joseph and Matthew Trojacek, appellant's brother-in-law and nephew. Matthew Trojacek was five years old at the time he was murdered. Theresa Trojacek, appellant's wife, was called as a witness by the prosecution and testified to conversations she had with appellant.[2] Appellant argued that the trial court erred in allowing his wife to testify to confidential marital communications because they were privileged under Tex.R.Cr.Evid., Rule 504(1).[3] The exception to this privilege found in Rule 504(1)(d)(2), he argued, applied only for offenses committed against the minor children of him or his spouse.[4] Matthew Trojacek was not the child of either appellant or Theresa Trojacek. For its part, the State argued that the exception in Rule 504(1)(d)(2) applied to *any* minor child, and since appellant was charged with a crime against the person of a minor child the exception was applicable. Both the State and appellant primarily based their arguments on the "plain language" of Rule 504.

Noting that there were no cases on point and that the commentators on the rules of evidence were in disagreement on this issue, the court of appeals reasoned that with the increased governmental concern over sexual and violent assaults against children, the exception in Rule 504(1)(d)(2) was intended to cover any minor child. The court of appeals wrote: "We understand the exception contained in Rule 504(1)(d)(2) to expand the number of cases involving crimes against children in which an accused will not be permitted to invoke a marital privilege and prevent the jury from hearing otherwise relevant testimony." *Ludwig v. State*, 872 S.W.2d at 775. "Thus, ... we hold that the State was entitled to the benefit of the exception stated in Rule 504(1)(d)(2) because Ludwig was being tried for an offense against Matthew Trojacek, a minor child." *Id.*

---

**1.** At an earlier trial, which resulted in a mistrial, the trial court had conducted a hearing out of the presence of the jury to determine whether certain private conversations between appellant and his wife were privileged. The trial court ruled that they were not privileged, and therefore were admissible; this ruling was subsequently adopted by the trial court at appellant's retrial.

**2.** Theresa Trojacek's testimony, regarding conversations between herself and appellant, included the following:

> "He [appellant] said he was going to have to take Joe out. He said he might have to take Matthew out, too."

> \* \* \* \* \* \*

> "He [appellant] said—he told me that I didn't know how easy it would be for him to be behind—I think he said the big green farm tractor or a round hay baler or the metal barn down below Joe's barn, and when he came by he'll just blow [Joe's] brains out."

> \* \* \* \* \* \*

> "He [appellant] said he would have a shotgun."

**3.** Rule 504. Husband–Wife Privileges.

> "(1) Confidential communications privilege.
> (a) Definition. A communication is confidential if it is made privately by any person to

his spouse and it is not intended for disclosure to any other person.
(b) General rule of privilege. A person, whether or not a party, or the guardian or representative of an incompetent or deceased person, has a privilege during their marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to his spouse while they were married.
(c) Who may claim the privilege. The privilege may be claimed by the person or his guardian or representative, or by the spouse on his behalf. The authority of the spouse to do so is presumed."

**4.** Rule 504. Husband–Wife Privileges.

> "(1) Confidential communications privilege.
> \* \* \* \* \* \*
> (d) Exceptions. There is no privilege under this rule:
> \* \* \* \* \* \*
> (2) In a proceeding in which an accused is charged with a crime against the person of *any minor child or any member of the household of either spouse*, except in a proceeding where the accused is charged with a crime committed during the marriage against the spouse."

## II.

### A. Plain Language

■ In *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991), we held that in construing statutes, we begin with the literal text of the statute, without reference to any extratextual factors, as long as the plain language, read in light of established rules of construction, is unambiguous. This strict plain-text method of statutory construction was essentially based on a constitutional separation of powers rationale.[5] After all, the plain language of a statute is the best evidence we have of the legislative intent. *Id.*, at 785. Here, of course, we are called upon to interpret a rule of evidence, enacted not by the Legislature but rather by this Court. In this context, the separation of powers rationale of *Boykin* does not apply and there is nothing to prevent us from considering extratextual factors in determining intent, regardless of the plain language of the rule.[6] Even so, it is best to begin our analysis with the language of Rule 504(1)(d)(2) itself.

The question is what the rule means by "crime against the person of any minor child or any member of the household of either spouse...." It is appellant's contention that "any minor child" is modified by the prepositional phrase "of either spouse." Accordingly, for the exception to apply, the minor child who is the victim of the crime must be the offspring of one of the spouses. The State argues that "any minor child" stands alone, without a modifier, and that it need only show an offense against a child to invoke the exception. Words and phrases are to be read in context and construed according to the rules of grammar and common usage. Cf. 82 C.J.S. Statutes § 340 (1953); V.T.C.A. Government Code, § 311.011(a); *McVickers v. State*, 838 S.W.2d 651, 655 (Tex.App.— Corpus Christi 1992), aff'd. on other grounds, 874 S.W.2d 662 (Tex.Cr.App.1993) (Code Construction Act applies to Texas Rules of Criminal Evidence). Unfortunately, this obvious maxim proves unhelpful in this case.

■ "Generally, the presence of a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one." 82 C.J.S. Statutes § 334 (1953), at 672. Consistent with this convention of punctuation (and presuming that it applies equally to "phrases" as to "clauses"),[7] if appellant's construction of Rule 504(1)(d)(2) is correct, we would expect it to be punctuated as follows:

> "crime against the person of any minor child or any member of the household, of either spouse";

or, better yet:

**5.** "When we interpret statutes ..., we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation.... We do so because our state constitution assigns the law*making* function to the Legislature while assigning the law *interpreting* function to the Judiciary. See Tex. Const. art. II, § 1." *Boykin*, 818 S.W.2d at 785 (emphasis in the original). "[T]he Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted." *Id.* (emphasis in the original).

**6.** Indeed, this Court has traditionally referred to extratextual sources as aids in interpreting our rules of evidence. See e.g. *Campbell v. State*, 718 S.W.2d 712 (Tex.Cr.App.1986) (Texas Rules of Civil Evidence); *Cole v. State*, 839 S.W.2d 798 (Tex.Cr.App.1990) (Federal Rules of Evidence); *Bodin v. State*, 807 S.W.2d 313 (Tex.Cr.App. 1991) (analogous federal rule of evidence that was never enacted); *Davis v. State*, 872 S.W.2d 743 (Tex.Cr.App.1994) (analogous federal rule of evidence, advisory notes to federal rules of evi-

dence, Texas common law pre-Rules of Evidence); *Burks v. State*, 876 S.W.2d 877 (Tex.Cr. App.1994) (repealed Code of Criminal Procedure provision).

However, in this instance other rules of evidence are not very helpful. The Federal Rules of Evidence do not contain a marital privilege. See Fed.R.Evid., Rule 501. The Texas Rules of Civil Evidence contain a marital communications privilege, but the civil privilege has no exception like the one we are called upon to construe in this case. See Tex.R.Civ.Evid., Rule 504.

**7.** In this context, a "clause" is "a group of words having its own subject and predicate but forming only part of a compound or complex sentence." The New Merriam–Webster Dictionary (1989), at 149. Obviously we are not inquiring into the relationship between full-blown clauses, as so defined, in the instant case. But presumably the generalization holds true for phrases as well. A "phrase" is "a group of two or more grammatically related words that form a sense unit expressing a thought." *Id.*, at 548.

"crime against the person of any minor child, or any member of the household, of either spouse".[8]

That the exception is not punctuated in either of these two ways militates against appellant's construction. On the other hand, there is another punctuation convention the absence of which in Rule 504(1)(d)(2) tends to cut in his favor. That is, that "[g]enerally, a comma should precede a conjunction connecting two coordinate clauses or phrases in a statute in order to prevent the following qualifying phrases from modifying the clause preceding the conjunction." 82 C.J.S., supra. According to this convention, if the State's construction of the statute is the one intended, we would expect to find the exception punctuated this way:

"crime against the person of any minor child, or any member of the household of either spouse".

The problem, of course, is that the exception is not punctuated in any of these ways. In fact, it is not punctuated at all. Absent a comma or commas, Rule 504(1)(d)(2) is ambiguous; we cannot say with any assurance

8. Perhaps the optimal way to write an exception that intends to limit the "minor child" to only the offspring of one of the spouses would be: "crime against the person of any minor child of, or any member of the household of, either spouse ..."

9. The State argues that, despite the absence of punctuation, its construction of the language of the statute is sound. If the prepositional phrase "of either spouse" may jump over the "or" to "any minor child," the argument goes, then it would be equally permissible for the prepositional phrase "of the household" also to jump over the "or" to modify "any minor child." This reading would cause the "any minor child" language to be redundant, because the minor children in the household would be included within the "any member of the household" language. This Court should avoid a construction of a rule of evidence that will render a provision of that rule meaningless. Cf. V.T.C.A. Government Code, § 311.021(2) (entire statute is intended to be effective); *Gordon v. State,* 707 S.W.2d 626, 629 (Tex.Cr.App.1986) (court should avoid construction which renders provision of statute "futile and purposeless"); *Clapp v. State,* 639 S.W.2d 949, 951 (Tex.Cr.App.1982) (court should avoid construction which renders any constitutional provision "meaningless and inoperative").

It is, of course, possible to read Rule 504(1)(d)(2) in just the way that the State suggests. To make it clear that the provision should be read this way, we could punctuate it as follows:

whether "of either spouse" does or does not modify "any minor child." We simply cannot tell which of the two competing constructions, appellant's or the State's, is the intended one.[9]

## B. Extratextual Sources

We are compelled, then, to resort to extratextual sources to determine the intent behind the rule. A court may consider the purpose behind the rule as an aid to construction. Cf. 67 Tex.Jur.3d Statutes § 93 (1994); V.T.C.A. Government Code, § 311.023(1). Unlike other rules of evidence, privileges are not designed primarily to exclude unreliable evidence. In fact, privileges expressly subordinate the goal of truth-seeking to other societal interests, and the societal interest to be protected by the marital communication privilege—which was one of the first privileges to be recognized— is the institution of marriage.[10] See *Trammel v. United States,* 445 U.S. 40, 45, 100 S.Ct. 906, 909, 63 L.Ed.2d 186, 190 (1980). Marriage, which is viewed by many as the

"a crime against the person of any minor child, or any member, of the household of either spouse".

And this would in fact be redundant in just the way the State says it would. But allowing "of either spouse" to jump over the "or" does not *necessarily* mean "of the household" must also be read to modify "any minor child." Even if we held that the prepositional phrase, "of either spouse," modifies "any minor child," we need not *necessarily* hold as well that the prepositional phrase, "of the household," must also modify it. As we have noted *ante,* we could resolve the ambiguity caused by the lack of punctuation in the provision by construing it as if it had been punctuated:

"a crime against the person of any minor child, or any member of the household, of either spouse".

Here the commas make it clear that, while "of either spouse" modifies both "any minor child" and "member," "of the household" modifies only "member." The problem is that absent any commas at all, we cannot tell which (if either) of the above alternatives the rule conveys. The State's argument does not clear up the ambiguity.

10. "The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617, 620 (1934).

traditional core of the family, is generally embraced in our society as an institution deserving support.[11] The marital communications privilege is based on the belief in the "sanctity of privacy in marriage, the desirability of free communication between spouses, and the concept that the preservation and maintenance of marital relations requires that husband and wife be permitted to talk confidentially without fear of having their communications disclosed to others, even in court." McFall & Little, Privileges Under Texas Law: A Dying Breed?, 31 S.Tex.L.Rev. 471, 478 (1990). The purpose behind the privilege would seem to counsel that any exception thereto be narrowly construed. Absent contrary evidence of the rulemakers' intent, we would therefore be inclined to resolve the ambiguity in Rule 504(1)(d)(2) by holding the exception was meant to cover only the minor child of either spouse.

As the court of appeals recognized, at least one treatise on the Rules of Criminal Evidence has noted the ambiguity of the exception to the communications privilege in Rule 504(1)(d)(2). See *Ludwig v. State*, supra at 774, quoting Wendorf, Schleuter & Barton, Texas Rules of Evidence Manual (3rd ed.1991), at V–59–60. The court of appeals, however, opted for the perspective of another set of commentators. Professors Goode, Wellborn and Sharlot have noted that language making it abundantly clear that the exception to the marital communications privilege applies only to the minor child "of either spouse" was left out of the draft of what is now Rule 504(1)(d)(2) that was ultimately recommended by the Subcommittee on Criminal Matters of the Senate–House Select Committee on the Judiciary to the Select Committee on Rules of Evidence in Criminal Cases (hereinafter "Subcommittee") in 1985. From this they conclude that the privilege was not meant to cover crimes against children, period. See 1 Goode, Well-

born & Sharlot, Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 504.8 (2d ed.1993), at 391 & n. 10. We are constrained to agree.

The present writer was a member of the Advisory Committee to the Subcommittee. From incomplete official records of the proceedings of the Subcommittee found in the Legislative Reference Library in the State Capitol, and from personal records in possession of the writer, the following may be gleaned. An early version of the Rule 504(1)(d)(2) exception, under consideration by the Subcommittee as of October 3, 1984 (and numbered Rule 505(d)(2) at that time), made it indisputably clear that the privilege did not apply in prosecutions for:

> "a crime against the person of a minor child of either spouse or any member of the household of either spouse".

However, in response to a proposed amendment considered by the Subcommittee at a meeting on October 5, 1984, the language of the Rule as (in pertinent part) it currently reads was taken up and adopted. This amendment changed "a minor child" to "any minor child," and struck the prepositional phrase "of either spouse" that followed immediately thereafter. It is precisely this amendment, unpunctuated as it was, that created the ambiguity we are wrestling with today. Under the circumstances, however, the purport of the amendment is clear. By changing "a" to "any," and deleting the first "of either spouse," the Subcommittee signalled an intention that the exception should apply to "any minor child," without qualification. The Subcommittee could have made that intent more obvious, as we have shown, by punctuating the amendment:

> "a crime against the person of any minor child, or any member of the household of either spouse".

11. "This premise is part of a broader value judgment that embraces marriage as part of the foundation of Western society: religious and lay moral beliefs, as well as doctrines of natural and positive law, view the position of heterosexual monogamous marriage as the preeminent intimate relationship in Western society. Some have regarded the traditional family, with mar-

riage at its core, as a vehicle for transmitting social values from one generation to the next. Others view the traditional home nostalgically, as the only bastion of tranquility in an increasingly violent and impersonal society." *Developments in the Law—Privileged Communications*, 98 Harv. L.Rev. 1450, 1581–82 (1985).

But lack of that clarifying punctuation should not lead us to reject the plain inference to be derived from the October 1984 amendment, *viz:* that the Subcommittee ultimately decided that the privilege should not adhere in the prosecution of crimes against children. This Court adopted what later became Rule 504(1)(d)(2), with the Subcommittee's amendment intact.

■ From this history we gather that the rulemakers rejected the notion that the exception to the marital communications privilege should extend only to prosecutions for crimes against the children of the spouses. Accordingly, we resolve the ambiguity in Rule 504(1)(d)(2) by construing the exception to cover prosecutions for crimes against any minor children. We hold, in short, that "of either spouse" does not modify "any minor child."

One final consideration informs our decision today. The marital testimonial privilege contains an exception that is articulated in the same language as Rule 504(1)(d)(2), with the same lack of punctuation and the same consequent ambiguity. Rule 504(2)(b)(1), supra. In the last legislative session the Legislature passed a bill amending the Code of Criminal Procedure to include a new provision, Article 38.10. Acts 1995, 74th Leg., ch. 67, § 2, p. 446, eff. Sept. 1, 1995. This new provision reads:

> "The privilege of a person's spouse not to be called as a witness for the state does not apply in any proceeding in which the person is charged with a crime committed against the person's spouse, *a minor child,* or a member of the household of either spouse."

Article 38.10, supra. (emphasis added). Thus, for purposes of the testimonial privilege, the Legislature has, by use of appropriate punctuation, clarified that "of either spouse" does not modify "minor child." Both Rule 504(2) and Rule 504(1) were designed with the same policy in mind—to preserve the sanctity of the marital relationship. However, Article 38.10 indicates that to some extent the Legislature is willing to encroach upon this relationship. By construing the exception contained in Rule 504(1)(d)(2) so that "of either spouse" does *not* modify "any

minor child," we harmonize it with the legislative judgment regarding how far it is appropriate to go to preserve the institution of marriage.

Although the general purpose behind the marital communications privilege would appear to support a narrow reading of the exception in Rule 504(1)(d)(2), other extratextual factors dictate otherwise. On balance, we believe that the exception in 504(1)(d)(2) was meant to include any minor child, not just the minor child of either spouse, and we so hold. Accordingly, we affirm the judgment of the court of appeals.

BAIRD, J., concurs: While it is certainly true that the separation of powers rationale of *Boykin v. State,* 818 S.W.2d 782 (Tex.Cr. App.1991), does not apply to our interpretation of the rules we promulgate, I nevertheless believe the *Boykin* method of statutory interpretation should be applied to rules of procedure and evidence. In these latter contexts, the reader should be able to rely on the literal text of the rule and not be forced to resort to extratextual factors unless the rule's plain language is ambiguous or would lead to absurd consequences. *State v. Mancuso,* 919 S.W.2d 86, 87–88 (Tex.Cr.App. 1996). With these comments, I join the majority opinion.